**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| ANNA D. ARIAS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-01818-JMG |
| | : | |
| RODNEY EARL BRENNEMAN, et al., | : | |
| Defendants. | : | |

_____

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **November 21, 2022**

## I.   OVERVIEW

Plaintiff Anna Arias underwent a knee replacement procedure conducted by Doctor Rodney Brenneman, M.D. ("Brenneman") and other personnel at Orthopedic Associates of Lancaster Ltd. ("OAL"). Plaintiff has asserted professional liability claims against defendant Brenneman, and a vicarious liability claim against OAL. Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

## II.   BACKGROUND AND ALLEGATIONS

On April 17, 2019, plaintiff Anna Arias ("Arias") underwent a knee replacement procedure that was performed by defendant Rodney Brenneman, M.D. ("Brenneman") and other personnel at defendant Orthopedic Associates of Lancaster Ltd. ("OAL"). Def.'s Statement of Facts ¶ 2, ECF No. 29-4 [hereinafter "DSOF"]; Pl.'s Resp. to Def.'s Statement of Facts ¶ 2, ECF No. 32 [hereinafter "PRSOF"].[1]

---

[1] The factual record for this case, and in particular this motion, is thin. Plaintiff did not submit any appendix with this motion, and Defendants' appendix consisted only of court filings and correspondence between the parties and the Court. It should be noted that each party's Statement of Facts focused primarily on the litigation itself, and not the facts that gave rise to the litigation.

On April 19, 2021, Plaintiff initiated this action by filing a complaint, which alleged professional liability claims against Brenneman and a vicarious liability claim against OAL.  Pl.'s Complaint, ECF No. 1.  In her complaint, Plaintiff claimed that Defendant Brenneman deviated from the appropriate standard of care by not first conducting other examinations of the knee prior to conducting the April 17, 2019 procedure, *id*. at ¶ 18, and, by not stopping the April 17, 2019 procedure once they visualized the knee and determined that the condition of the knee did not warrant this procedure.  *Id*. at ¶ 19.  Additionally, Plaintiff alleged that Brenneman committed a battery by not obtaining proper consent from Plaintiff prior to conducting the procedure.  *Id*. at ¶ 26.  Finally, Plaintiff asserted a vicarious liability claim against defendant OAL, alleging that OAL is liable for the tortious actions of Brenneman and other employees.  *Id*. at ¶ 31.

Relevant Procedural History

Pursuant to the Rule 16 Conference that was held on September 21, 2021, this court issued a Scheduling Order on September 24, 2021. ECF No. 19.  The Order set out the following deadlines:  all fact discovery would be completed by April 11, 2022; affirmative expert reports by February 21, 2021; rebuttal expert reports by March 15, 2022; and expert depositions by April 11, 2022.

A telephonic status conference was then held on January 12, 2022, during which the Plaintiff was instructed by this Court to prosecute this action with more urgency.  On May 11, 2022, this court emailed the parties requesting a status update.  Defense counsel responded on May 12, 2022, and stated that they had not received Plaintiff's answers to interrogatories, and that Plaintiff's deposition had been cancelled and rescheduled.  On May 13, 2022, Plaintiff emailed a letter to the court apologizing for the delayed response and for not seeking an extension of case management deadlines.

On June 1, 2022, this court issued an Order to Show Cause, directing Plaintiff to show cause as to why this court should not dismiss this action for failure to prosecute.  ECF No. 26. Plaintiff's counsel responded by electronic filing on June 13, 2022, explaining that it was not the fault of the Plaintiff but rather the fault of counsel, and requesting that the court refrain from dismissing the case.  ECF No. 27.  Upon receipt of Plaintiff's submission, the Court instructed the parties to submit a proposed revised scheduling order by June 17, 2022.  Defense counsel submitted a proposed order on June 17, 2022 – Plaintiff's counsel then sent an email confirming the proposed dates in the order.

On June 23, 2022, this court issued an Amended Scheduling Order setting the following deadlines:  All fact discovery to completed by September 15, 2022; Affirmative expert reports due by August 1, 2022; Rebuttal expert reports due by August 15, 2022; and requiring that expert depositions be concluded by no later than September 15, 2022.  ECF No. 28.

To date, it is unclear whether Plaintiff has conducted any discovery that would be required to prosecute this action.  Additionally, Plaintiff has not identified an expert to provide testimony regarding Defendants' conduct or Plaintiff's alleged injuries, nor has Plaintiff produced any expert report to the Court.

On September 6, 2022, Defendants moved for summary judgment.  ECF No. 29.  In their motion, Defendants contend that summary judgment is warranted because Plaintiff failed to identify an expert or produce an expert report, which is required in most medical malpractice cases under Pennsylvania law.  In the alternative, Defendants claim that the case should be dismissed pursuant to FED. R. CIV. P. 41(b) due to Plaintiff's failure to prosecute her case.  Plaintiff filed a response on October 6, 2022, the vast majority of which responded to Defendants' FED. R. CIV. P. 41(b) arguments.  ECF No. 32.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).  "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify [] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

### IV.    DISCUSSION

#### a.  Inadequate Discovery

The record with respect to Defendants' Motion for Summary Judgment and Plaintiff's Response would best be described as thin.  Up until this point, Plaintiff has produced no evidence

to the court that would establish her medical malpractice claims, and by extension her vicarious liability claim.  In her motion response, Plaintiff claims that Defendants' motion is not a motion for summary judgment based on the facts of the case or any evidence supporting Defendants' arguments.  Plaintiff's counsel explained that he is still trying to obtain the necessary medical records related to this action.  Attached to Plaintiff's motion response were two affidavits describing efforts that were made to secure these medical records.

Under FED. R. CIV. P. 56(d), a party opposing summary judgment may request additional time to complete discovery.  *See Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988).  FED. R. CIV. P. 56(d) states that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: - … (2) allow time to obtain affidavits or declarations or to take discovery."  The Third Circuit has interpreted this rule to "require a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and *why it has not previously been obtained*." *Dowling,* 855 F.2d at 139–40 (emphasis added).  In addition, a Court should consider the procedural posture of the case, and whether the nonmoving party has had an adequate opportunity to obtain and produce relevant discovery.  *Id.* at 138–39.

Plaintiff submitted two affidavits with her response to Defendants' motion – one signed by Plaintiff's attorney Peter Munsing, and the other signed by the attorney's paralegal Maria Keller. Attorney Munsing's affidavit states that some records from hospitals that treated the Plaintiff have not been produced.  Attorney Munsing then states that he used constables to serve a subpoena on March 10, 2022 on a health care facility, and that no records were provided.  He further states that his office contacted the hospital several times in July, August and September to follow up on the

5

records requests, but as of the date of filing the records have not been provided.  Finally, Attorney Munsing stated that he would be filing a motion to enforce the subpoenas.  Keller's affidavit provides information on the request that was made with respect to Hershey Medical Center and efforts she made to contact the appropriate authorities regarding this records request.  Taken as a whole, these affidavits appear to have been submitted to explain the delay in obtaining discovery as well as efforts that were made to obtain the relevant records.  For that reason, the Court construes these affidavits as a motion to extend discovery.

Upon consideration of this motion, the Court is not inclined to grant the Plaintiff any additional time to conduct further discovery.  Plaintiff initiated this action on April 19, 2021, and it appears from the affidavits that Plaintiff first attempted to obtain the necessary records to establish the elements of this action almost one year after the action was filed.  Additionally, despite Plaintiff's counsel's statement that he would be filing a Motion to Enforce Subpoenas, the Court has yet to receive any such motion from the Plaintiff.  Moreover, this motion would be denied, as the discovery phase for this action has passed.

In his letter to the Court submitted on May 13, 2022, Attorney Munsing conceded that he should have alerted the court regarding deposition scheduling and obtaining medical records.  The Court agrees.  As a matter of course, and in accordance with the Court's policies and procedures, parties are routinely informed that the Court is always willing to assist in the resolution of any discovery issues.  Moreover, parties are also reminded to contact the Court if these issues arise so that they may be addressed.  Plaintiff's counsel should have heeded this advice and contacted the court during the discovery phase instead of raising this issue for the first time in their Motion for Summary Judgment Response.  This action has been plagued by unnecessary delays since the outset of the litigation and will not be prolonged any further due to a party's lack of due diligence.

### b.  Medical Malpractice Claims

In addition to the lack of evidence produced by the Plaintiff in this action, Plaintiff has also failed to identify an expert to testify to either the negligence or battery claims, and, has failed to produce an expert report.  This is a medical malpractice action wherein the Plaintiff has alleged that the Defendants were negligent in ordering and performing a knee replacement surgery on the Plaintiff on April 17, 2019, and, committed a battery within the same procedure by not obtaining proper consent from the Plaintiff prior to the procedure.  Pennsylvania law defines medical malpractice as the "unwarranted departure from generally accepted standards of medical practice, resulting in injury to the patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 573 Pa. 245, 254 (2003).  In a medical malpractice action in Pennsylvania, a plaintiff must establish the following:  (1) A duty owed by the physician to the patient; (2) a breach of that duty to the patient; (3) that the breach was the proximate cause of the harm suffered; and (4) that the damages suffered were a direct result of the harm.  *Hightower-Warren v. Silk*, 548 Pa. 459, 463 (1997).  Generally speaking, to prove these elements a plaintiff must present *expert testimony* to establish the applicable standard of care, the breach of that standard, causation, and the extent of the alleged injury suffered.  *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) ("In other words, the general rule under Pennsylvania law is that expert testimony is *required* in order for a plaintiff to establish the elements of a prima facie case of medical malpractice.").  Expert testimony is required in these cases because negligence alleged to have been committed by a physician typically encompasses matters not within the ordinary knowledge and skill of laypersons.  *Id.*; *see Toogood*, 573 Pa. at 261 ("a jury of laypersons generally lacks the knowledge

7

to determine the factual issues of medical causation; the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care").

There are limited circumstances where a "narrow exception" to the expert testimony requirement may be applied. *Hightower-Warren*, 548 Pa. at 463 n.1. These limited circumstances may exist "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons". *Id*. This exception must be "carefully limited" however, given the understanding required of the procedure being performed by the physician and the physician's responsibilities at the time of the alleged injury. *Toogood*, 573 Pa. at 261 (exception not applicable in a res ipsa loquitur context in that case).

Expert testimony is also often required in cases alleging a lack of informed consent. In order to establish a prima facie case for a lack of informed consent, Plaintiff must prove that "a physician failed to advise [Plaintiff] of material facts, risks, complications and alternatives to surgery which a reasonable man in the patient's position would have considered significant in deciding whether to have the operation." *Gouse v. Cassel*, 532 Pa. 197, 202 (1992). Under Pennsylvania's Medical Care Availability and Reduction of Error (MCARE) Act, expert testimony is required to establish that a medical procedure falls within the scope of a lack of informed consent claim, and "to identify the risks of that procedure, the alternatives to that procedure and the risks of these alternatives." 40 P.S. § 1303.504(c); see *Bilinski v. Wills Eye Hosp.*, No. CV 16-2728, 2021 WL 3910718, at *5 (E.D. Pa. Sept. 1, 2021). Additionally, the Pennsylvania Supreme Court has required expert testimony be supplied to juries in these types of cases to assist the juries in determining what information would be material. *Moure v. Raeuchle*, 529 Pa. 394, 405 (1992) ("the jury must be supplied with expert information as to the nature of the harm attendant to [a] procedure, and the probability of that harm occurring in order to determine what information would

8

be material to a patient for purposes of informed consent"); *see Fitzpatrick v. Natter*, 599 Pa. 465, 490 (2008).

Here, Plaintiff claims that Defendants violated the applicable standard of care by ordering a knee replacement she alleges was not warranted, and, that they committed a battery in that Plaintiff did not consent to the procedure and the subsequent post-procedure effects that she has alleged to have suffered.  These claims amount to a conventional medical malpractice action. Defendants have argued that judgment in their favor is warranted because the Plaintiff has not produced any expert evidence to establish the elements of her case.[2]  The Court agrees.  This is a case involving matters that are not within the ordinary knowledge and skill of laypersons. *Toogood*, 573 Pa. at 261.  Expert testimony is required in this case because based on the very limited record produced by the parties, it is apparent that a jury would need to be supplied with expert information as to the "the degree of skill, knowledge, and experience required of the physician; and the breach of the medical standard of care," *id.*, and as to "the nature of the harm attendant to [a] procedure, and the probability of that harm occurring in order to determine what information would be material to a patient for purposes of informed consent." *Moure,* 529 Pa. at 405.  Moreover, given the nature of this case and the claims involved, this case would not qualify

---

[2] Plaintiff did not address this argument in their response, but rather only responded to Defendants' Fed.R.Civ.P. 41(b) motion.  While the burden in a motion for summary judgment is on the moving party, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324.  Where, as here, "the non-moving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (internal quotation marks and citation omitted); *see also Hollingsworth v. R. Home Prop. Mgmt.*, LLC, 498 F. Supp. 3d 590, 600 (E.D. Pa. 2020). Plaintiff has not provided any actual evidence to meet her burden of persuasion at trial, let alone her burden with respect to the pending motion.

as one of the "limited circumstances" where the narrow exception to the expert testimony rule be applied. *See Toogood*, 573 Pa. at 261.

### c.  Defendants' 41(b) Motion for Sanctions

In their Motion for Summary Judgment, Defendants requested that sanctions be imposed on the Plaintiff pursuant to Fed.R.Civ.P. 41(b) in the manner of a dismissal of the case with prejudice.  Plaintiff spent almost the entirety of her Motion Response explaining why the case should not be dismissed pursuant to Fed.R.Civ.P. 41(b).  As the Court has already granted summary judgment based on the lack of evidence and lack of expert testimony produced by Plaintiff, the Court declines to rule on this issue at this time.

## V.  CONCLUSION

For the reasons set out in this memorandum, the Court grants summary judgment to Defendants.  An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge